710 F.2d 69
 32 Fair Empl.Prac.Cas. 20, 32 Empl. Prac.
Dec. P 33,686
ASSOCIATION AGAINST DISCRIMINATION IN EMPLOYMENT, INC., et
al., Plaintiffs-Appellees,
v.
CITY OF BRIDGEPORT, et al., Defendants-Appellees,
and
Bridgeport Firefighters for Merit Employment, Inc., et al.,
Intervenors-Defendants-Appellants.
 No. 1092, Docket 83-7042.
 United States Court of Appeals,
Second Circuit.
 Argued March 31, 1983.
Decided June 13, 1983.
 
 David N. Rosen, New Haven, Conn. (Michael P. Koskoff, New Haven, Conn., on the brief), for plaintiffs-appellees.
 Thomas K. Jackson, Bridgeport, Conn., for defendants-appellees.
 William B. Barnes, Milford, Conn. (J. Daniel Sagarin, Hurwitz & Sagarin, P.C., Milford, Conn., on the brief), for intervenors-defendants-appellants.
 Before KEARSE, PIERCE and PRATT, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Intervening defendants Bridgeport Firefighters for Merit Employment, Inc., et al. ("BFME"), appeal from an order of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, then Judge, now Chief Judge, modifying an injunction previously entered by the court with the approval of this Court as a remedy for violations by defendants City of Bridgeport, et al. (the "City"), of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Secs. 2000e to 2000e-17 (1976 & Supp.V 1981), and the antidiscrimination provision of the State and Local Fiscal Assistance Act ("Revenue Sharing Act"), 31 U.S.C. Sec. 1242(a) (1976), in the hiring of firefighters. BFME contends that the district court's modification violates this Court's rulings in the two previous appeals in this matter. We disagree and affirm the order of the district court.
 
 BACKGROUND
 
 2
 The history of this action is described in detail in two prior opinions of this Court, see Association Against Discrimination in Employment v. City of Bridgeport, 594 F.2d 306 (2d Cir.1979) ("ADE I "); Association Against Discrimination in Employment v. City of Bridgeport, 647 F.2d 256 (2d Cir.1981) ("ADE II "), aff'g in part 479 F.Supp. 101 (D.Conn.1979), cert. denied, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982), familiarity with which is assumed. The principal focus of the present appeal is the mandate of this Court in ADE II, which largely affirmed the district court's order, whose principal thrust was that, in order to remedy the City's violations of antidiscrimination laws, the City would be required to offer firefighter positions and to pay backpay to minority victims of the City's past discrimination.
 
 
 3
 In ADE II we upheld findings of the district court that the City had "engaged in a continuous policy of discrimination" against black and hispanic candidates in the hiring of firefighters, 647 F.2d at 274, as evidenced by many discriminatory acts, "includ[ing] the giving of the 1975 exam that was not job related and had discriminatory impact, and the individual acts of discrimination against several minority candidates who sought to take that exam in 1975," id. at 275. We also upheld findings
 
 
 4
 that, in addition to administering discriminatory exams, the City had purposely failed to recruit minority applicants, had actively deterred interested minority applicants, and had discriminated against several individual minority candidates, and that the City's failure to recruit and its discriminatory treatment of minority individuals were not in good faith.
 
 
 5
 Id. at 284 (footnote omitted).
 
 
 6
 In light of the district court's factual findings, we also upheld the remedial provisions fashioned by the court,[1] based upon its considered judgment "that merely ordering nondiscriminatory hiring in the future, even coupled with the requirement that the City actively recruit minority candidates, would be inadequate either to remedy past discrimination or to 'assure prospective minority candidates that applying is no longer futile.' " 479 F.Supp. at 113 (citation omitted). The remedial order, as set out in id. at 115-19 and in ADE II, 647 F.2d at 267-69, and as quantitatively modified in ADE II, see note 1 supra, provided in pertinent part (1) that the City must prepare a list of 73 victims of the City's discrimination to be offered positions as firefighters, consisting principally of
 
 
 7
 (a) The black and hispanic persons who filed applications for either the 1971 or 1975 test, who have not been offered but still seek employment with the Fire Department, and who pass both the agility test and medical examination to be administered by the City,
 
 
 8
 479 F.Supp. at 115-16; 647 F.2d at 267, and (2) that the City must prepare a list of up to 73 discriminatees to receive backpay. Most pertinently for purposes of the present appeal, preference for inclusion in the backpay list was given to persons on the list of discriminatees to be offered firefighter positions.
 
 
 9
 Events following our decision in ADE II have proceeded largely in accordance with the remedial plan structured by the district court, with one major exception. At some point it was discovered that some discriminatees who would be eligible to be placed on the list of 73 persons to be offered firefighter positions, if they still sought such positions, would represent that they were still interested when in fact they were not, simply in order to receive the backpay to be awarded offerees.[2] The result would be that a number of persons would have themselves placed on the offeree list and go through training programs with no genuine intention of becoming full-fledged firefighters. The City would then have expended substantial sums in training persons who would perform no firefighting services; and the number of minority firefighters in the Bridgeport Fire Department would be lower than it would be if only still-interested discriminatees were placed on the list of those to be offered positions.
 
 
 10
 In order to avert this potentially unproductive and wasteful turn of events, plaintiffs and the City agreed to request the district court to modify the remedial scheme in one respect. In order to eliminate the incentive for those not still desiring to be firefighters to misrepresent their intentions, it was agreed that the backpay list should simply be divorced from the offeree list. Thus, up to 73 persons[3] who could prove they were victims of the City's discrimination could be awarded backpay without the need to commit themselves to becoming firefighters; 73 discriminatees still interested in becoming firefighters would be placed on the offeree list, but not all of them would receive backpay since only a maximum of 73 backpay awards are to be made.
 
 
 11
 In an order dated December 13, 1982 ("December 1982 Order"), the district court approved this proposal, stating in part as follows:
 
 
 12
 The City of Bridgeport, the deterred minorities, and the minority applicants have reached an agreement to eliminate the incentive for any minority applicant to misrepresent a present interest in a firefighter position for purposes of securing a backpay award. The City is obligated to pay its backpay liability to all persons who are placed on the backpay list. The number of persons for which the City has a potential liability in the form of backpay is , and this number is neither increased nor decreased by the agreement with the plaintiffs. The City will merely consider a backpay list of persons, some of whom would not have been entitled to be on the list, in exchange for an offeree list with bona fide candidates, saving city training resources and helping department morale. On the other hand, the deterred minorities want to be considered for places on the offeree list, which can only occur if places on the offeree list are not taken by persons not properly there, that is minority applicants without a present interest in and qualifications for a firefighter position. In exchange for these places on the offeree list being available to deterred minorities, these deterred minorities who actually are placed on the offeree list relinquish their right to be placed on the backpay list, that occurrence having been automatic for them under the court order. The dozen or so minority applicants who would be tempted to represent that they are presently interested in the position in order to be placed on the offeree list and therefore automatically on the backpay list, will honestly state that they are no longer interested in the position in exchange for the City agreeing to place them on the backpay list and for the deterred minorities agreeing to give up their rights to be on the backpay list.
 
 
 13
 This court has no difficulty with the substance of the solution arrived at by the plaintiffs and the City of Bridgeport. Each of the parties is bargaining to achieve a desired result as a mature, intelligent person. In essence, the plaintiffs and the City have agreed to alter the composition of the backpay list to ensure that the offeree list has only qualified minority persons genuinely interested in pursuing a firefighter career in the Bridgeport Fire Department. As noted above, this court and the Court of Appeals clearly intended that the offeree list include only minority persons of this character.
 
 
 14
 December 1982 Order at 5-6.
 
 
 15
 BFME is a nonprofit organization representing non-minority firefighters within the Bridgeport Fire Department. It had been permitted to intervene in the action in 1976 to seek relief from any injury that might be done to nonminority firefighters by the City as a result of any modification of the City's hiring or promotional practices. ADE II, 647 F.2d at 261. BFME opposed the motion to modify the injunction principally on the grounds that the modification would increase the number of minority candidates hired by the City and would constitute a quota. These objections were overruled by the district court, which observed that
 
 
 16
 [a]s the intervening defendants are neither paying nor receiving backpay under the court order, they have no complaint as to who is or is not awarded backpay. That this altered backpay list would make the offeree list more likely to be the list envisioned by this court and by the Court of Appeals, provides to the BFME no basis for complaint.
 
 
 17
 December 1982 Order at 6-7. The court rejected BFME's contention that the modification transformed the court's earlier remedial order into a quota system:
 
 
 18
 The fact that the alteration of the backpay list may better ensure a proper offeree list seems to provide no legitimate basis for concern to the BFME or its members. The BFME will not be heard to complain that the agreed upon actions of other parties in affairs not involving the BFME, increase the likelihood that the court order will be more properly implemented. Further, to the extent, if any, that the offeree list is already established and contains names of persons not properly includable, that is persons who have misrepresented a present interest in a firefighter position in an effort to get on the backpay list, the list does not comport with the order of this court as affirmed by the Court of Appeals. Any such persons not properly on the list shall be removed and replaced by persons with the requisite present interest in a firefighter position.
 
 
 19
 The BFME complains at length that the alteration agreed by the plaintiffs and the City transforms the court's order for a goal to a quota. As discussed above, all changes in the backpay list are matters concerning the plaintiffs and the City and not the BFME, and do not transform the offeree list [from] a goal into a quota with respect to minority hiring.
 
 
 20
 Id. at 7-8.
 
 
 21
 This appeal followed.
 
 DISCUSSION
 
 22
 At the outset we note that BFME's claim of standing to challenge the December 1982 Order is tenuous at best. We have nevertheless considered all of BFME's attacks on that order and we find them entirely meritless.
 
 A. Standing
 
 23
 It is elementary that a litigant is not entitled to have the court decide the merits of an issue he raises unless he can show some basis for arguing that the challenged action has caused him a cognizable injury. See, e.g., Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 41 n. 22, 96 S.Ct. 1917, 1926 n. 22, 48 L.Ed.2d 450 (1976); Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). BFME argues that its satisfaction of this requirement is demonstrated by the fact that it was allowed to intervene in the present action and to participate in prior appeals. This argument is wide of the mark, for
 
 
 24
 [a]n appealable order may not ... be challenged by ... every party to the suit in which it is entered. To have standing a party must be aggrieved by the judicial action from which it appeals.
 
 
 25
 United States v. City of Miami, 664 F.2d 435, 445 (5th Cir.1981) (en banc) (plurality opinion); see id. at 462 (opinion of F. Johnson, J., concurring in part); Boston Tow Boat Co. v. United States, 321 U.S. 632, 64 S.Ct. 776, 88 L.Ed. 975 (1944); Cerro Metal Products v. Marshall, 620 F.2d 964, 969 & n. 8 (3d Cir.1980); 7A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1923, at 632-33 (1972). It seems likely that BFME cannot meet this test.
 
 
 26
 Plaintiffs and the City argue that BFME lacks standing because the December 1982 Order changed only the qualifications for receiving backpay, and BFME's members were never to receive or make any backpay awards. If the December 1982 Order had relevance only to backpay we would readily agree that BFME lacks standing to challenge it; but the very purpose of that order's modification of the injunction was to affect the hiring remedy. Thus if BFME could point to any respect in which the modification's effect on hiring could be said to injure persons represented by BFME, we would think BFME's standing clear.
 
 
 27
 BFME has made no such showing, however, and the nature of the modification causes us to doubt that it could do so. BFME represents incumbent nonminority firefighters. Incumbents have no cognizable interest in whether vacancies are filled by minority or nonminority candidates. Nor does the modification appear to have any impact on the seniority rights of the incumbents. Under the original injunction any person who received backpay was expected to become a firefighter and would have received retroactive seniority. If some of these persons shortly left the Fire Department, it is possible that the seniority of present incumbents might thereby be enhanced. Thus, it might be argued that substitution of persons who have no intention of quickly leaving the Department would adversely impact the incumbents' seniority rights. Leaving aside the merits of such a claim, however, we note that it appears to lack any factual basis. As we read the December 1982 Order, a minority candidate who is added to the offeree list in place of a now-disinterested discriminatee--the latter to receive only backpay and not the offer of a firefighter position--is not to be given retroactive seniority. See December 1982 Order at 9-10.
 
 
 28
 Hence we are unable to fathom any cognizable interest of BFME that is affected by the December 1982 Order, and BFME's standing to appeal from that order is suspect.
 
 B. The Merits
 
 29
 Even if BFME has standing to appeal from the December 1982 Order, we find its arguments meritless. The court had the power to modify its injunction to adapt the remedies ordered to changes in circumstances; the changed circumstances justified the modification; and the modification was consistent with the mandate of this Court in ADE II.
 
 
 30
 The power of a district court to modify its past injunctive decrees in order to accommodate changed circumstances is well established. See, e.g., United States v. United Shoe Machinery Corp., 391 U.S. 244, 248-49, 251, 88 S.Ct. 1496, 1499-1500, 1501, 20 L.Ed.2d 562 (1968); System Federation No. 91, Railway Employes' Department v. Wright, 364 U.S. 642, 646-48, 81 S.Ct. 368, 370-72, 5 L.Ed.2d 349 (1961) ("a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen"); United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932) ("continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need"); New York State Ass'n for Retarded Children v. Parisi, 706 F.2d 956, 967-71 (2d Cir.1983). Further, "[w]hile changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." King-Seeley Thermos Co. v. Aladdin Industries, Inc., 418 F.2d 31, 35 (2d Cir.1969). "It is well recognized that in institutional reform litigation ... judicially-imposed remedies must be open to adaptation when unforeseen obstacles present themselves [and] to improvement when a better understanding of the problem emerges ...." New York State Ass'n for Retarded Children v. Parisi, supra, at 969.
 
 
 31
 The record before us reveals that the circumstances entirely justified the district court's modification of the injunction. A principal purpose of the remedial scheme was to alleviate the effects of the City's past discrimination against minority candidates. ADE II, 647 F.2d at 282. To this end a hiring goal was established, designed to increase the number of minority firefighters in the department by requiring the City to make offers to those who met the pertinent qualifications and were still interested in becoming firefighters. The experience of plaintiffs and the City in attempting to construct the list of persons to be offered positions clearly provided a better appreciation that the structure of the decree, linking backpay entitlement to an expression of continued interest, would disserve the goal of increasing the number of minority firefighters. It was well within the district court's discretion to seek to correct this unforeseen impediment to the achievement of the injunction's remedial goals.
 
 
 32
 The district court's modification of the injunction in order to take account of the experience of the parties in seeking to carry out the remedial order was in no way inconsistent with either the explicit or the implicit mandate of this Court in the prior appeals in this case. No issue had been raised in those appeals as to the propriety of linking the backpay list to the offeree list, and we did not address that question. Hence there is no basis for suggesting that the divorce of the two lists violates an express mandate of this Court. BFME attempts to construct a basis for arguing that the modification violated directions that were implicit, by arguing that we expressed the view in ADE II that fewer than 73 minority discriminatees would be hired, whereas the modification guarantees that 73 discriminatees will be hired. BFME has misread our opinion. In ADE II we approved the district court's goals of remedying the effects of the City's past discrimination in the hiring of firefighters, id. at 282; we accordingly approved the concept that persons to be placed on the list of those to receive offers should be discriminatees who "still seek" positions AS FIREFIGHTERS, ID.; AND WE APPROVED THE NUMBER "73," SEE NOTE 1 SUPRA. our observation that the offers might be accepted by fewer than 73 discriminatees did not alter the approved premise that only those still interested should be placed on the list; rather we simply hypothesized, on the basis of the City's representation that it would be unable to train all of the offerees at the same time, that there might be an interval of 1-2 years between the formulation of the list and the eventual offers, and we speculated that some of those on the offeree list might lose interest during this interval.[4]
 
 
 33
 In fact what has occurred is that the compilation of the list of 73 discriminatees to be given offers was not completed as swiftly as we had hypothesized it might be; the interval between placement of the last names on the list and the actual making of the offers will be short; and the likelihood is thus lessened that in the actual interval persons on the list will lose interest. These events were not foreclosed by ADE II, and the December 1982 Order's attempt to ensure that only persons still interested in becoming firefighters are included on the offeree list is precisely within the mandate of this Court.
 
 
 34
 Finally, we reject BFME's contention that the December 1982 Order somehow transforms the injunction into the imposition of a quota. In discussing the original order in ADE II, we stated that
 
 
 35
 the order does not impose a quota. The affirmative requirement as to hiring does not permanently intrude into the City's hiring process. There are 121 vacancies in the fire department. The order requires the City to make its next offers to the minority candidates whose names are placed on the list to be compiled. Thereafter no numerical requirements whatever are imposed on the City, either as to the remaining vacancies or future vacancies: the City is required actively to recruit minority candidates to compete for vacancies in the fire department; and it is required to hire on a nondiscriminatory basis; but no permanent numerical requirements are established.
 
 
 36
 647 F.2d at 282-83 (footnote omitted). This description is equally applicable to the present modification. No quota has been established.
 
 
 37
 The December 1982 Order of the district court is affirmed.
 
 
 
 [1]
 We did, however, lower the numerical goals set by the district court because we had reversed its ruling of liability under Title VI of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000d to 2000d-6 (1976 & Supp. V 1981), and that reversal shortened the period during which the City was liable for discriminatory acts. Our ruling led us to reduce from 102 to 73 the number of minority persons to be offered firefighter positions or awarded backpay
 
 
 [2]
 The periods covered by the backpay awards date back to 1976 and 1977, and hence substantial sums may be involved
 
 
 [3]
 By the time of the motion, 20 minority candidates had been hired pursuant to interim hiring orders and the number yet to receive offers and backpay was 53. For the sake of convenience we continue to refer to the number 73, which was the originally approved goal. See note 1 supra
 
 
 [4]
 The passage of ADE II relied on by BFME states that
 we note that the court's order is properly viewed as setting hiring "goals" because it may well be that not all of the 102 minority candidates to be offered positions will actually accept the City's offers. The City has represented that it cannot train new firefighters at a rate faster than 20 every three to six months. If the list contained as many as 102 names, a period of more than two years could elapse before the last candidates on the list received offers. If as few as 73 names are placed on the list, it appears that at least a year would elapse before the last persons on the list received offers. It is entirely possible that some of the candidates whose names are not near the top of the list will eventually decline to accept appointment to the fire department because of a change in interest or in circumstances during the one to two year interim period. Thus, although the order requires that the next offers be made to minority candidates, it does not mean that minority candidates will be the next persons hired.
 647 F.2d at 283 (footnote omitted; emphasis added).