32 F.3d 670
 Richard MOORE, Plaintiff-Appellee-Cross-Appellant,
v.
Paul COMESANAS, individually and as a Deputy Sheriff of
Columbia County, Defendant-Appellant-Cross-Appellee,
Dutch Village Adult Mobile Home Park, Inc., Defendant.
 Nos. 1647, 1912, Dockets 93-9191, 93-9249.
 United States Court of Appeals,
Second Circuit.
 Argued May 23, 1994.
Decided Aug. 3, 1994.
 
 John Connor, Jr., Hudson, NY (Connor & Connor, of counsel), for plaintiff-appellee-cross-appellant.
 James A. Resila, Albany, NY (Carter, Conboy, Bardwell, Case, Blackmore & Napierski, of counsel), for defendant-appellant-cross-appellee.
 Before: VAN GRAAFEILAND, CARDAMONE and ALTIMARI, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Paul Comesanas, a Columbia County Deputy Sheriff, appeals from that portion of a judgment of the United States District Court for the Northern District of New York (Scullin, J.) that set aside as a matter of law (Fed.R.Civ.P. 50(b)) a jury verdict in favor of Comesanas in a section 1983 action by Richard Moore for unlawful arrest and malicious prosecution. Moore appeals from that portion of the same judgment that upheld Comesanas's defense of qualified immunity. We reverse that portion of the judgment setting aside the jury verdict in Comesanas's favor and vacate the remainder of the judgment as moot.
 
 
 2
 Richard Moore's brother Thomas and Thomas's now deceased wife were the owners of a trailer parked in leased space in the Dutch Village Adult Mobile Home Park Sales & Services, Inc., in Claverack, New York. In June of 1991, the Park commenced eviction proceedings against Thomas and his wife because of the constant violations of Park rules by their son, and on August 15, 1991, a town justice issued a judgment and warrant of eviction. These papers were not prepared with the clarity and specificity that ordinarily is expected of a legal document. The judgment provided that a warrant be issued to put the landlord in possession "effective November 30, 1991." The warrant stated that the Moores had been ordered to exit said premises "on or before November 30, 1991" and directed the sheriff's office to remove them from the premises "as of November 30, 1991." Section 233(d)(1) of New York's Real Property law provides that the officer to whom such a warrant is directed shall give at least ninety days notice in writing of the proposed eviction. The bookkeeper at the sheriff's office who handled evictions apparently concluded that the eviction in the instant case could take place anytime after the expiration of the ninety days and prior to November 30, 1991. Accordingly, she scheduled the eviction to be held on November 25, 1991, ninety-four days after service of the section 233(d)(1) notice. A notice to this effect was sent to the attorneys for the Mobile Park on August 27, 1991. A similar notice was sent to Barry Sack, Thomas Moore's attorney, on October 30, 1991. Thomas Moore testified that he received notice that the eviction was scheduled for November 25, 1991 but that he never contacted either the sheriff's office or the judge who had issued the initial warrant.
 
 
 3
 On November 25, 1991, Comesanas received the warrant with instructions, either express or implied, to process it. Thomas Moore was not on the scene when Comesanas arrived at the trailer park but appeared a short time thereafter. He protested to Comesanas that the eviction was premature, and telephone calls by Comesanas to the sheriff's office and by Moore to his lawyer followed. Comesanas testified that he asked the office bookkeeper with whom he talked to contact Moore's attorney about the eviction. He testified further that when the bookkeeper returned his call she said that the attorney "told her that it was okay to go ahead with the eviction and that he wanted to talk to Mr. Moore." Tr. at 253. Comesanas relayed this message to Moore, and Moore called his lawyer. Comesanas then testified:
 
 
 4
 I was right there when he was talking to his attorney. After the conversation ended, I asked Mr. Tom Moore what were you told, what is it going to be. And he says to me, my attorney told me that the eviction is going to go on. If there is any problems later, he will handle with the park, the mobile home park attorney.
 
 
 5
 Tr. 253-54.
 
 
 6
 Thomas Moore never denied that he had made the above-quoted statement. His response to an inquiry concerning this statement was as follows:
 
 
 7
 Q Do you remember your stating anything to Deputy Comesanas as to whether or not the eviction could go forward?
 
 
 8
 A I would have had to say something or he would have had to say something because it was going on, it wasn't stopping.
 
 
 9
 Q My question was do you remember you having said anything to Deputy Comesanas as to whether or not the eviction would go forward after those conversations.
 
 
 10
 A I really don't remember.
 
 
 11
 Tr. 141.
 
 
 12
 It is not without significance that, after this conversation took place, Comesanas joined Thomas Moore in the trailer and together they took the necessary steps to remove breakable matter from the walls, shelves and counters preparatory to the moving of the trailer. After this task was completed, Comesanas left the scene.
 
 
 13
 While Comesanas was gone, Tom Moore's brother Richard arrived at the trailer park. He parked his car immediately in front of Thomas Moore's trailer. He then went inside the trailer and refused to get out. Because these acts prevented trailer park employees from moving the trailer and proceeding with the eviction, Comesanas was recalled to the scene. Richard Moore thereafter refused Comesanas's repeated requests to move his car and exit the trailer, a refusal that must be viewed in the light of Richard's following admission at the trial:
 
 
 14
 Q Did Thomas tell you at that time that there already had been a discussion with the Sheriff's Department after he spoke--
 
 
 15
 A He may have.
 
 
 16
 Q After he spoke to his lawyer and that the eviction would proceed, did he tell you that?
 
 
 17
 A He may have.
 
 
 18
 Tr. 178.
 
 
 19
 When Richard refused to move his car and exit the trailer, Comesanas arrested him and charged him with violating section 195.05 of New York State's Penal Law, which makes it a misdemeanor to intentionally obstruct, impair or pervert the administration of law or other governmental function by means of physical force or interference or to prevent or attempt to prevent a public servant from performing an official function by means of intimidation, physical force or interference. Following the arrest, Comesanas instructed the deputy who came to his assistance to simply take Richard to the sheriff's office, give him an appearance ticket and release him. Thomas Moore later went to the sheriff's office, picked Richard up and brought him back. Richard then got into his car and left the Park. The charges against Richard subsequently were dismissed, and this action was brought.
 
 
 20
 During the course of the trial, Comesanas's attorney argued that the judgment and warrant were ambiguous. Furthermore, and perhaps more importantly, Comesanas's counsel argued in both his opening to the jury and his summation that, ambiguity vel non, Comesanas and Thomas Moore agreed that the November 25 eviction should go forward. The jury thus was presented with the factual issue of whether Thomas Moore had given his consent to the eviction going forward and whether Richard, with knowledge of the consent, nevertheless attempted to prevent Comesanas from carrying out his assigned task by physically making such performance impossible. The jury was given additional enlightenment concerning the unwarranted obdurateness of Richard's conduct by the following uncontradicted testimony of Comesanas:
 
 
 21
 In the meantime Tom Moore came back to the mobile home park. He parked his car, got out of the car, started walking toward me, and then he says to me, what is going on. I says, well, I just had to arrest your brother because he was giving the park manager problems, refusing to comply with my orders, he was interfering with the eviction. He says, Jesus Christ, I told him to leave it alone; I told him the attorneys were going to handle it.
 
 
 22
 Tr. 257-58.
 
 
 23
 The issue of probable cause, which was predominantly factual in nature, was properly presented to the jury. See Fassett v. Haeckel, 936 F.2d 118, 120-21 (2d Cir.1991); Gramenos v. Jewel Co., Inc., 797 F.2d 432, 438 (7th Cir.1986), cert. denied, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987); Smith v. County of Nassau, 34 N.Y.2d 18, 25, 355 N.Y.S.2d 349, 311 N.E.2d 489 (1974); Clark v. Nannery, 292 N.Y. 105, 107-08, 54 N.E.2d 31 (1944). Indeed, the district court prepared and submitted special factual interrogatories which asked the jury to find whether the arrest and prosecution were privileged in that "a reasonable, prudent officer would have believed, based upon reasonably trustworthy information, that there existed probable cause" to arrest or prosecute the plaintiff. In each instance, the jury answered "yes." If, as the jury found, probable cause existed, Richard Moore's claim of false arrest and malicious prosecution must be rejected. Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42, 45 (2d Cir.1985). However, after the jury rendered its verdict in favor of Comesanas, the district judge granted Richard Moore's motion for judgment n.o.v., i.e., "judgment as a matter of law." The district court supported its action with a single sentence explanation: "It appears based upon all the evidence in this case that the weight of the evidence would clearly be that there was no probable cause that existed at the time this arrest was made." After so ruling, the district court nonetheless dismissed the complaint, because it found that Officer Comesanas was entitled to the defense of qualified immunity.
 
 
 24
 At this point, we can dispose quickly of a procedural argument that has occupied much of the time of both the litigants and this Court. As stated above, we are presented with two appeals--Richard Moore's appeal from the grant of qualified immunity and Paul Comesanas's appeal from the grant of judgment as a matter of law. Richard Moore contends that, because Comesanas succeeded in having Richard's complaint dismissed below, Comesanas has sustained no cognizable injury and therefore has no standing to appeal. See Association Against Discrimination in Employment, Inc. v. City of Bridgeport, 710 F.2d 69, 73 (2d Cir.1983). Recognizing the existence of a general rule to this effect, the parties vigorously debate whether Comesanas sustained a cognizable injury from the district court's setting aside of the jury verdict. Because this argument is addressed to the merits of Comesanas's appeal, not to that of Richard Moore, we see no need to decide it.
 
 
 25
 If the district court's dismissal of the complaint was justified on the basis of any facts appearing in the record, the judgment in Comesanas's favor may be affirmed in the appeal brought by Richard Moore without the filing of a cross-appeal. See Schweiker v. Hogan, 457 U.S. 569, 585 n. 24, 102 S.Ct. 2597, 2607 n. 24, 73 L.Ed.2d 227 (1982); Blum v. Bacon, 457 U.S. 132, 137 n. 5, 102 S.Ct. 2355, 2359 n. 5, 72 L.Ed.2d 728 (1982); Great American Audio Corp. v. Metacom, Inc., 938 F.2d 16, 19 (2d Cir.1991). The district court set aside the jury verdict as being against the weight of the evidence. That is not the proper test for setting aside a jury verdict. As we said in Mattivi v. South African Marine Corp., "Huguenot", 618 F.2d 163, 167 (2d Cir.1980), "when deciding whether to grant a judgment n.o.v., the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."
 
 
 26
 Accordingly, we reverse that portion of the district court's judgment which set aside the jury's verdict as a matter of law; we vacate as moot that portion of the judgment granting Comesanas qualified immunity; and we dismiss the appeal filed by Comesanas. No costs to either party.