**INVICTA PLASTICS (USA) LTD., Plaintiff,**

v.

**MEGO CORP., Defendant.**

**No. 79 Civ. 0780 (CBM).**

United States District Court, S. D. New York.

March 20, 1981.

Smith, Steibel, Alexander & Saskor, P.C. by Stuart B. Fisher, New York City, for plaintiff.

Bertram Frank, P.C., New York City, for defendant.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

Plaintiff, Invicta Plastics (USA) Ltd., (Invicta), filed this action against defendant, Mego Corp. (Mego), on February 9, 1979, alleging violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125, et seq.,[1] Section 368 of the New York General Business Law, and the common law of unfair competition. Plaintiff sought an injunction preventing further infringing activities on the part of the defendant, recovery for damages suffered by the plaintiff, an accounting of the defendant's profits, costs of the action and attorney's fees. The case was tried without a jury on July 8 and 9, 1980. Because we find that defendant's actions did violate the Lanham Act, we do not reach the plaintiff's state and common law claims.

### FINDINGS OF FACT

Plaintiff and defendant are New York corporations engaged in the business of selling toys and games. Plaintiff is the seller of MASTERMIND, on which it owns the registered trademark. Plaintiff has been selling this game in the United States since 1975. MASTERMIND is described in the toy industry as a "hidden code logic game" for 2 to 4 players, ages 7 to adult. Plaintiff has a series of MASTERMIND games, such as Electronic MASTERMIND, Mini MASTERMIND, etc., in addition to the original MASTERMIND. The original game was invented by Mordechai Meirovitz, a free lance inventor of various games.

Defendant also sold a hidden code logic game similar in play to, and in direct competition with, MASTERMIND, called SIXTH SENSE. Defendant began selling SIXTH SENSE in 1978 but sales were discontinued and a final closeout sale took place in February, 1980.

The SIXTH SENSE boxes displayed two phrases using the MASTERMIND name:

---

1. 15 U.S.C. § 1114(1):
   Any person who shall, without the consent of the registrant, (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising ... on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1125(a):
Any person who shall affix, apply, or annex or use in connection with any goods, services or any container or container for goods, a false designation or origin, or any false description or representation, including words, or other symbols tending falsely to describe or represent the same ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

(1) "The game that challenges both your intelligence *and* power of deduction. For 2 to 4 players. Created by "Marko Meirovitz," the inventor of MASTERMIND. ®"", and (2) "SIXTH SENSE is my most challenging invention since MASTERMIND ® Marko Meirovitz." The name MASTERMIND appears on the SIXTH SENSE package a total of nine times. Each time it is followed by the trademark notice, ®. Invicta's ownership of MASTERMIND is indicated by a statement on the side of the package which reads: "MASTERMIND ® is the registered trademark of Invicta Plastics (USA) Ltd."

Defendant's own corporate name appeared on the SIXTH SENSE package a total of 23 times. Defendant's ownership of SIXTH SENSE was indicated in three different ways: by the Mego Corp. name, by its "Mind Flex" symbol indicating that SIXTH SENSE is one of a series of games, and by the corporate logo, a stylized "MC". Defendant's name and logo are in considerably larger type size than the MASTERMIND name and the statement of Invicta's ownership. However, the Mind Flex symbol would not be familiar to many purchasers as signifying Mego's ownership.

Defendant also used a television and radio advertising campaign to promote SIXTH SENSE which ran from November of 1978 through December, 1978. The television ads featured Mr. Meirovitz, repeating the quote which appeared on the SIXTH SENSE package: "SIXTH SENSE is my most challenging invention since MASTERMIND." The radio ads did not use Mr. Meirovitz but did make reference to MASTERMIND. The radio ads did not refer to Invicta's ownership of MASTERMIND.

Plaintiff received several orders for the game SIXTH SENSE from customers who apparently believed that Invicta made this game. Neither plaintiff nor defendant normally sells its games directly to the public, but distributes them to retail outlets where the public purchases them "off the shelf."

## CONCLUSIONS OF LAW

■ Plaintiff contends that the use of the name MASTERMIND on the SIXTH SENSE package constitutes both infringement and a false designation of origin. For the reasons given, this court agrees.

■ Under both the infringement section of the Lanham Act, 15 U.S.C. § 1114, and the false designation of origin section, 15 U.S.C. § 1125, the same test is applied to determine whether a particular activity violates the Act. *Clark's of England, Inc. v. Glen Shoe Co. Inc.*, 485 F.Supp. 375 (S.D.N.Y.1980); *Markel v. Scovill Mfg. Co.*, 471 F.Supp. 1244 (W.D.N.Y.1979). If the ordinary purchaser is "likely to be confused" as to the source of the goods by the acts of the infringing party, these Lanham Act sections have been abridged.

■ It is not necessary under these sections of the Lanham Act to show that anyone has actually been deceived. Rather, the focus of the inquiry is whether the activity in issue is *likely* to cause confusion to the ordinary consumer. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F.Supp. 366 (S.D.N.Y.) *aff'd*, 604 F.2d 200 (2d Cir. 1979).

■ Confusion might also result from true statements if their placement or form is misleading. The public may be misled into believing that the infringing product was somehow involved with, or approved by, the trademark holder. This result is also prohibited by these sections of the Lanham Act. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979).

■ In determining the likelihood of confusion, the court must consider the ultimate impression made by the defendant's product, keeping in mind that "the buying public includes the unthinking and the credulous" and that "the public cannot be expected to analyze or carefully weigh what is presented to them in promotion and advertisements." *Dallas Cowboys Cheerleaders, Inc., supra*, 467 F.Supp. at 374; *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288 (S.D.N.Y.1972).

The case at hand does not present the traditional case of trademark infringement or false designation of origin usually brought under these Lanham Act sections. That is, defendant has not created a mark which is "confusingly similar" to the plaintiff's. Neither has defendant packaged its game in such a way that its tradedress looks similar to plaintiff's tradedress; both packages are sufficiently distinct. Mego's own name and trademark are prominently displayed on the SIXTH SENSE packages, refuting the contention that Mego is seeking to "palm off" its goods as those of Invicta. Mego also identifies plaintiff as the copyright owner of MASTERMIND, although not in a very noticeable fashion. However, the fact that Mego placed its own logo on its game package as well as identifying the plaintiff's trademark in some fashion is not determinative of whether the public was confused as to the origin of SIXTH SENSE.

The underlying purpose of these Lanham Act sections is the protection of the public, and other competitors, from any misleading advertising or packaging which results in unfair competition. *W. E. Basset Co. v. Revlon, Inc.*, 354 F.2d 868 (2d Cir. 1966). The Act is to be broadly construed in order to achieve its remedial objectives. *Markel v. Scovill Mfg. Co.*, 471 F.Supp. 1244 (W.D.N.Y.1979); *DCA Food Industries, Inc. v. Hawthorne Mellody, Inc.*, 470 F.Supp. 574 (S.D.N.Y.1979).

Defendant used the name MASTER-MIND repeatedly over the SIXTH SENSE package, and only once referred to Invicta's ownership of MASTERMIND. The fact that MASTERMIND was used as part of a true statement by Mr. Meirovitz does not save it from being confusing. Truthful references to the trademark of another are permissible as long as the "unauthorized" reference does not cause confusion as to the source. In "comparative advertising" cases, then, one producer may refer to the product of another for purposes of honest comparison between the products, as long as the public remains aware of who produces which product. *See SSP Agricultural, Etc. v. Orchard-Rite Ltd.*, 592 F.2d 1096 (9th Cir. 1979).

For some members of the buying public, a glance at the SIXTH SENSE box would leave them confused as to who made either SIXTH SENSE *or* MASTERMIND. That is, consumers might believe that Mego was also the producer of MASTERMIND, or that the producers of MASTERMIND also made SIXTH SENSE.

It is thus clear that Mego was deliberately seeking to use the goodwill plaintiff has acquired in its success with MASTERMIND to sell its own product. Defendant admitted at trial, and indeed it seems perfectly reasonable, that it would not have used Mr. Meirovitz's statements about MASTER-MIND if that game were not successful. Defendant argues that such use is entirely appropriate in light of the fact that Meirovitz is the inventor of both games and that the two products would have been linked eventually anyway. But Mr. Meirovitz was not at all well known to the public when the advertising of SIXTH SENSE began. Defendant cannot claim that he was in any way a "public figure" whose name would sell games.

As requested by the court, both parties discussed in their post-trial briefs the publishing industry's practice of identifying an author by his past works, and the relevance of that practice to the case at hand. Defendant argued in its brief that Mego is free to list Meirovitz's past game inventions as a publisher lists an author's previous works, though published by a different company. However, as plaintiff correctly pointed out in its brief, there is absolutely no precedent for this type of advertising or promotion in the game and toy industry. The buying public has no idea who the inventor of any particular game is. Though buyers of books may specifically seek out new works by an author with whom they are familiar, buyers of games most probably rely on advertising alone for new products, or on the reputation of a firm whose games they have purchased before. In turn this reputation is created by the public's preference for previous games produced by

that company, not previous games produced by that inventor. At trial the defendant admitted it had never previously attempted an advertising campaign using the name of an inventor.

Defendant clearly hoped that the public's familiarity and satisfaction with MASTER-MIND, and not with Mr. Meirovitz, would lead them to purchase SIXTH SENSE. The benefit to Mego would be derived from connecting the two games in the public's mind. This connection obviously led to confusion in the public's mind as to who made MASTERMIND and who made SIXTH SENSE.

■ This inference of likelihood of confusion is readily drawn from the defendant's deliberate attempt to connect its game with plaintiff's well-established, highly successful one. *Mortellito, supra,* at 374; *see also D. C. Comics, Inc. v. Powers,* 465 F.Supp. 843 (S.D.N.Y.1978); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149 (9th Cir.), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963). Once this inference is made, actual confusion may be presumed. *Menley & James Lab. v. Approved Pharm. Corp.,* 438 F.Supp. 1061, 1067 (N.D.N.Y.1977).

In addition, plaintiff did offer in evidence several instances of actual confusion on the part of customers who tried to order SIXTH SENSE from Invicta. As noted above, MASTERMIND is not a product which is bought directly from Invicta, but is purchased from retail stores. Any confusion which occurred in the stores would be difficult to document and would likely involve a larger number of persons than the group of consumers who took the extra trouble to contact Invicta directly. However, it is not necessary to determine how often actual confusion did occur since we find that the likelihood of confusion clearly exists on this record.

## DAMAGES

As this court stated at the conclusion of the trial on July 9, 1980, damages will be the subject of a separate proceeding now that liability has been determined. Having violated sections 1114 and 1125 of the Lanham Act by its packaging and advertising for SIXTH SENSE, defendant is liable to plaintiff for damages under 15 U.S.C. § 1117.[2] This section provides that plaintiff may recover (1) defendant's profits from SIXTH SENSE; (2) any actual damages suffered; and (3) the costs of this action.[3]

Defendant has stipulated that as of October, 1979, it had sold 43,311 units of SIXTH SENSE, at a price between $4.99 and $5.25 each. Defendant realized a gross profit of $218,531 on these sales. Defendant's profits will be determined by subtracting the costs incurred to produce SIXTH SENSE from the $218,531 figure. Defendant should keep in mind that the trademark law requires it "to prove all elements of cost ... claimed." 15 U.S.C. § 1117.

■ With respect to the issue of actual damages, this court wishes to put all parties on notice that such damages will not be awarded in the absence of credible evidence demonstrating injury to plaintiff resulting from defendant's sales. Damage awards for lost sales and profits may not be based upon the assumption that a trademark infringement resulted in commercial injury. *See Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.,* 567 F.2d 154 (1st Cir. 1977); *Grotrian et al. v. Steinway & Sons,* 523 F.2d 1331 (2d Cir. 1975); *Caesars World, Inc. v. Venus Lounge, Inc.,* 520 F.2d 269 (3d Cir. 1975).

**2.** 15 U.S.C. § 1117:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this Chapter, the plaintiff shall be entitled ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.... In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.... The court in exceptional cases may award reasonable attorney fees to the prevailing party.

**3.** Plaintiff also sought an injunction against sales of SIXTH SENSE. At the time of trial, however, defendant had discontinued all sales of the game, and the injunction was denied.

Plaintiff has prevailed and, assuming adequate proof, will receive a damage award. It is therefore appropriate under the trademark law to award plaintiff the "costs of the action." 15 U.S.C. § 1117. It is not, however, appropriate to award attorney fees. Such awards are only permissible in "exceptional cases." *Id.* While the statute does not define "exceptional," the legislative history suggests that fee awards will only be appropriate where there has been "malicious," "fraudulent," "deliberate" or "willful" infringement. Defendant did identify itself on the SIXTH SENSE packages and in its advertisements. Plaintiff's ownership of MASTERMIND was also indicated on the SIXTH SENSE packages. The facts of this case will not support a finding of willfulness by defendant.

The parties shall proceed as directed by the court's order filed simultaneously herewith.

SO ORDERED.