**SPRINGS MILLS, INC.,**
**Plaintiff-Appellant,**

v.

**ULTRACASHMERE HOUSE, LTD., and**
**Bart Schwartz, Defendants-Appellees.**

**No. 178, Docket 83–7333.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1983.
Decided Dec. 23, 1983.

Allan Zelnick, New York City (Weiss Dawid Fross Zelnick & Lehrman, P.C., New York City, David Ehrlich, New York City, of counsel), for plaintiff-appellant.

Bart Schwartz, pro se.

Before KAUFMAN, MESKILL and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York entered on March 31, 1983. Previously, plaintiff-appellant Springs Mills, Inc. ("Springs Mills") had appealed from a judgment entered in that court, *Springs Mills, Inc. v. Ultracashmere House, Ltd.,* 532 F.Supp. 1203 (S.D.N.Y. 1982), which resulted in a reversal and remand by this court, 689 F.2d 1127 (2d Cir. 1982). For the reasons set forth below, the judgment of March 31, 1983, is affirmed in part and reversed and remanded in part.

## I. BACKGROUND

The details relevant to this litigation are set forth in the above-mentioned reported opinions and familiarity therewith is assumed. We summarize only those facts that are necessary for the disposition of the issues on this appeal.

Springs Mills is the owner of the registered trademark "Ultrasuede," under which it markets a highly popular fabric. Defendant-appellee Ultracashmere House, Ltd. ("UHL") manufactures women's garments from a spun rayon fabric and markets them under the label "Ultracashmere." Defendant-appellee Bart Schwartz is the president of UHL.

Springs Mills originally commenced this action by filing a complaint which alleged four causes of action: (1) trademark infringement in violation of the Lanham Trademark Act of 1946, 15 U.S.C. § 1114(1) (1976); (2) false designation of origin, false representation, or false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976); (3) unfair competition; and (4) common-law trademark infringement. In its prayer for relief, Springs Mills sought, *inter alia,* an order enjoining defendants "from using the term ULTRACASHMERE or any term confusingly similar thereto, including any term containing the element 'ULTRA' combined with the generic name of a fiber or fabric, alone or in combination with any other words, symbols and devices in respect of any aspect of its business, including but not limited to use as a corporate or trading name or a trademark or in advertising or selling of fabric or wearing apparel . . . ." Springs Mills also sought an order directing the defendants to deliver up for destruction all labels, tags and promotional materials in their possession. In addition, Springs Mills asked for an accounting of UHL's profits.

On January 20, 1982, following a bench trial, the district court entered judgment for defendants with respect to all causes of action. Springs Mills appealed. Upon review, we determined "that the district court erred in its determination that the marks Ultrasuede and Ultracashmere were not substantially similar when taken in the context of the setting in which they are displayed." *Spring[s] Mills, Inc.,* 689 F.2d at 1136. We reversed the district court's "determination that defendants did not act in bad faith when adopting their mark and trade dress" and the district court's conclusion that "there was no likelihood of confusion." *Id.* We remanded to the district court and reserved to that court "the task of devising an appropriate injunction,"

while noting that our holding was not to be construed as granting "Spring[s] Mills . . . any exclusive trademark rights to the use of the prefix 'Ultra' when used in conjunction with fabrics other than 'suede.'" *Id.* We also stated that Springs Mills' claims of false designation of origin, false representation, or false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), and unfair competition, which were dismissed by the district court, should be remanded "for such further action as is consistent with this opinion." *Id.* (footnote omitted). We noted further that the district court found that Springs Mills had failed to meet the burden of proof in its section 1125(a) claim by failing to offer evidence of competitive injury, but that, in our view, competitive injury was not required for recovery under section 1125(a). *Id.* at n. 13.

Following our reversal and remand, Springs Mills petitioned for rehearing. The petition was denied.

On February 17, 1983, the district court—after requesting that the parties submit proposed judgments—met with the parties in a brief conference. Springs Mills' proposed judgment provided, among other things, that defendants be enjoined permanently "[f]rom adopting or using the designation ULTRACASHMERE or any mark substantially similar thereto as a trademark for fabrics or garments or other products made in whole or in part of fabric." Springs Mills' proposed judgment also contained a paragraph that ordered that Springs Mills be "awarded its reasonable attorneys' fees as well as an accounting of Defendants' profits as provided in said Section 35 of the Lanham Act."

During the February 17 conference, the district judge rejected the proposed judgment after noting that it was not consistent with the decision of this court. The district judge asked the parties "to submit another proposed order in good faith viewing closely the spirit and intent of the order from the Court of Appeals."

By letter dated February 23, 1983, Springs Mills' counsel wrote to the district judge and asked him to: (1) hold a hearing for the purpose of demonstrating that a disclaimer was an inappropriate remedy or (2) give Springs Mills an opportunity to devise an order which would give it effective relief. Without further ado, the district court entered a final judgment dated March 30, 1983. The judgment permanently enjoined the defendants from using or adopting any hang tag, label or promotional material that simulates, copies or creates a relationship to any label, hang tags, or promotional materials used by Springs Mills; and enjoined the defendants from adopting or using the designation "Ultracashmere" in their trade dress, advertisements or promotional literature, unless accompanied by a disclaimer.[1] Springs Mills appeals from the entry of this judgment.

## II. DISCUSSION

■ The principal issues presented on this appeal are: (1) whether the district court erred in devising a limited injunction

---

1. The judgment stated, in pertinent part:

   It Is Hereby Ordered and Adjudged that the defendants, their officers, directors, employees, attorneys, agents, successors and assigns and all those in active concert or participation with them having notice of this judgment, directly or indirectly, are hereby permanently enjoined as follows:
   1. From adopting or using in any manner and for any purpose any hang tag, label or promotional material which directly or indirectly simulates, copies or in any way creates or sets forth an identity or relationship to the labels, hang tags or promotional materials used by Springs Mills, Inc., or Skinner Fabrics in respect of its fabrics, or to ULTRA-SUEDE, Springs Mills, Inc. or Skinner Fabrics as the source or origin of ULTRACASHMERE fabrics;
   2. From adopting or using the designation ULTRACASHMERE, or any mark substantially similar thereto, as a trademark for fabrics or garments or other products made in whole or in part from fabrics, or in their trade dress, advertisements or promotional literature, unless a statement is prominently affixed to these items, in lettering that is the same size as the largest lettering used on such items, stating that "ULTRACASHMERE and Ultracashmere House, Ltd. are not associated in any way with either ULTRASUEDE, Springs Mills, Inc. or Skinner Fabrics."

with respect to the defendants' use of "Ultracashmere"; (2) whether the district court erred in not considering Springs Mills' request for attorneys' fees and for an accounting; and (3) whether the district court erred in not considering Springs Mills' false advertising claim under section 43(a) of the Lanham Act. Springs Mills also contends that the district court erred in denying its request for a hearing made at the February 17 conference and made again in counsel's letter of February 23. We see no merit in these hearing contentions. The district court, having conducted a bench trial in the first instance, had wide discretion in determining whether a hearing was necessary on remand for the purpose of evaluating Springs Mills' contentions regarding the effectiveness of a limited, disclaimer injunction. *Cf. Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470, 478 (3d Cir.1978) (appellate court's "failure to specify that further evidence should be taken on remand could, at most, be construed as leaving a decision on the need to reopen the record to the sound discretion of the trial court."), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). Our review convinces us that the district court did not abuse that discretion. Consequently, these latter contentions warrant no additional discussion.

## A. *The Injunction*

Springs Mills contends that the district court erred in granting a limited injunction, rather than an absolute injunction, against defendants' use of "Ultracashmere"; that the disclaimer remedy is ordered only in rare cases different from the case at bar; that the disclaimer remedy violates the rule that an intentional infringer must forfeit the benefits of its fraud and move far away from its prior infringement; and that an absolute injunction against defendants

would not give Springs Mills a monopoly on "Ultra" marks. To bolster these contentions, Springs Mills complains that "[t]he District Court, without granting any hearing, treated the mere 'suggestion' of this Court as an order, and granted an injunction allowing defendants ... to use ULTRACASHMERE with a disclaimer"; and asserts that this court should reverse and order the District Court to enter an absolute injunction against defendants' use of "Ultracashmere."

We have considered Springs Mills' contentions with regard to an absolute injunction and find them uniformly without merit. Therefore, we hold that the district court did not err in devising an appropriate limited injunction. A district court has a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct, *Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 951 (2d Cir.1978), and appellate review of the terms of the injunction must focus upon whether there has been an abuse of that discretion. A review of the terms of the injunction herein satisfies us that, first, the court did not abuse its discretion. Second, when analyzed in the context of our previous decision, the district court's use of discretion in framing the injunction was well within the spirit and intent of that previous decision.[2] *Spring[s] Mills, Inc.,* 689 F.2d at 1136. In our previous decision, we carefully noted that Springs Mills was not entitled to any exclusive trademark rights regarding the prefix "Ultra," but nevertheless that Springs Mills was entitled to some relief from UHL's flagrant actions in blatantly copying its (Springs Mills') trade dress. *Id.* Hence, this explains our suggestion to the district court. We have considered this issue thoroughly and we see no reason to deviate from our previous position.

---

**2.** In our previous decision, we wrote:

It is our suggestion that the district court fashion a remedy in such a way that the defendants, so long as they use the trademark "Ultracashmere" (or any substantially similar mark) on their products, in trade dress, in advertisements or in promotional

literature, be required to include in these items a statement, in appropriate form, to the effect that "Ultracashmere" is not associated in any way with either Ultrasuede, Spring[s] Mills, Inc. or Skinner.

*Spring[s] Mills, Inc.,* 689 F.2d at 1136.

In its brief, Springs Mills asserts that "defendants have already violated the District Court's limited injunction, or at least announced their intention to do so." (Emphasis omitted). Additionally, Springs Mills claims that it received from defendants an announcement printed on a post card which, when distributed in the future in purported compliance with the March 30, 1983, injunction, will violate the terms of the injunction by failing to print the required disclaimer statement, as the injunction mandates, "in lettering that is the same size as the largest lettering used on such items." This court is not the proper forum in which to make an initial determination as to whether these allegations are true. Whether the allegations, if established, indicate that the terms of the injunction have not been complied with fully, or that the injunction should be modified because of changed circumstances or, for that matter, whether a contempt proceeding will lie are all decisions to be made initially by the district court.

■ Our decision, of course, does not foreclose the district court from issuing an absolute injunction—should the court find that a change of circumstances has occurred which it finds represents an egregious violation of the terms of the March 30, 1983 injunction. *Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 437, 96 S.Ct. 2697, 2705, 49 L.Ed.2d 599 (1976) (" 'sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen' ") (quoting *System Federation No. 91, Railways Employes' Department v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961)); *United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); *Association Against Discrimination in Employment v. City of Bridgeport,* 710 F.2d 69, 74 (2d Cir.1983); *New York State Association for Retarded Children v. Carey,* 706 F.2d 956, 967–71 (2d Cir.1983). Further, short of modifying the injunction, the district court, of course, has a continuing obligation of enforcing the injunctive order by the power of contempt, if neces-

sary. *Gunn v. University Committee To End The War In Viet Nam,* 399 U.S. 383, 389, 90 S.Ct. 2013, 2016, 26 L.Ed.2d 684 (1970); *Universal City Studios, Inc. v. N.Y. Broadway International Corp.,* 705 F.2d 94, 96 (2d Cir.1983).

## B. *Attorneys' Fees and Accounting*

Section 35 of the Lanham Act states in pertinent part:

> When a violation ... shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profit and damages or cause the same to be assessed under its direction.

15 U.S.C. § 1117 (1982).

Springs Mills contends that the district court erred in denying its request for attorneys' fees and for an accounting. First, Springs Mills argues that profits can be awarded under section 35 of the Lanham Act whenever an infringer's conduct is willful, even though the plaintiff does not show lost sales and the parties are not competitors.

■ We agree with Springs Mills' basic contention that an accounting may be appropriate whenever an infringer's conduct is willful. Under the circumstances herein, where we previously found that the defendants "adopted their mark and trade dress for no other purpose than to obtain a free ride on the good reputation of their successful competitor," *Spring[s] Mills, Inc.,* 689 F.2d at 1134, Springs Mills is entitled to have its accounting claim considered by the district court. *See, e.g., Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582, 584–85 (5th Cir.1980); *W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 664 (2d Cir.1970); *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.,* 186 U.S.P.Q. 134, 137 (S.D. N.Y.1975).

■ We also agree with Springs Mills' contention that it is entitled to have its

request for attorneys' fees considered. Section 35 of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117 (1982). The circumstances herein, constituting willful infringement, qualify this case as one in which the district court should have considered the available remedy of attorneys' fees or, at least, should have stated its reasons for failing to do so. *See, e.g., O'Brien International, Inc. v. Mitch,* 209 U.S.P.Q. 212, 221 (N.D.Cal.1980); *RCA Records v. Kory Records, Inc.,* 197 U.S.P.Q. 908, 909 (E.D.N.Y.1978); Fed.R.Civ.P. 52(a).

In the context of this case, the district court's failure to consider Springs Mills' requests for an accounting and for attorneys' fees was an abuse of discretion.

C. *False Advertising*

■ The district court's original decision denied relief for false advertising because, in its view, Springs Mills lacked standing under the federal false advertising statute, section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), since its fabric did not compete with defendants' fabric. In our previous opinion, we expressed our disagreement with this requirement of competitive injury, stating that "competitive injury is not required for recovery under section 1125(a)." *Spring[s] Mills, Inc.,* 689 F.2d at 1136 n. 13.

Springs Mills complains that, despite this reversal, the district court failed to consider this cause of action anew and that this failure was error. We agree. Similar to Springs Mills' accounting and attorneys' fees contentions, we believe that the district court should have considered the false advertising claim or, at least, should have stated its reasons for failing to do so. Fed. R.Civ.P. 52(a).

**3.** Springs Mills contends that, if the case should be remanded, it should be remanded to a different judge. We decline to do so. The district judge clearly stated his desire to comply with "the spirit and intent" of our prior

## III.  CONCLUSION

For the reasons stated above, we reverse and remand [3] to the district court for consideration of the accounting, attorneys' fees and false advertising claims. We affirm the district court's action in fashioning the limited, disclaimer injunction.

determination; he did not indicate that he could not put his previously expressed findings aside, nor did he evince personal bias. *See United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977).