IMAGINEERING, INC., Plaintiff,

v.

VAN KLASSENS, INC. and Robert Lukingbeal, Defendants.

No. 92 Civ. 0751 (RLC).

United States District Court, S.D. New York.

March 30, 1994.

Heslin & Rothenberg, P.C. (Susan F. Gullotti, Nicholas Mesiti, of counsel), Albany, NY, for plaintiff.

Robinson Brog Leinwand Reich Genovese & Gluck, P.C. (David C. Burger, of counsel), New York City, Pitts & Brittian (Robert E. Pitts, Raymond E. Stephens, of counsel), Knoxville, TN, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

The background of this trade dress infringement case involving rival manufacturers of garden furniture, Imagineering, Inc. ("Imagineering") and Van Klassens, Inc. ("Van Klassens"), is set forth in an opinion issued September 4, 1992, with which familiarity is assumed. Van Klassens and its

president, Robert Lukingbeal, are the defendants in this action. On October 28, 1993, a jury trial commenced to hear plaintiff's federal law claims of trade dress infringement and false advertising, and state law claims of unfair competition and violation of the New York State Anti–Dilution statute.

The jury returned a verdict favorable to plaintiff on its federal law claims and state law claim for unfair competition, and awarded plaintiff $860,000 in compensatory damages and $4,000,000 in punitive damages. Prior to the close of trial, the parties had agreed to submit plaintiff's anti-dilution claim and defendants' laches claim to the court. Following the jury's verdict, plaintiff voluntarily withdrew its anti-dilution claim.

This action is presently before the court for consideration of: 1) whether laches bars all of plaintiff's claims, and 2) whether plaintiff is entitled to attorney's fees, costs, enhanced damages and injunctive relief.

## I.

### A.

■ A laches defense, which may be raised as a bar to a claim for both injunctive relief and money damages, *Carl Zeiss Stiftung v. VEB Carl Zeiss, Jena,* 433 F.2d 686, 703 (2d Cir.1970), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971), requires defendants to show that 1) plaintiff had knowledge of defendants' use of its trade dress; 2) plaintiff inexcusably delayed in taking action with respect thereto; and 3) defendants will be prejudiced by permitting plaintiff inequitably to assert its rights at this time. *See, e.g., Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.,* 457 F.Supp. 1090, 1096–1100 (S.D.N.Y.1978) (Weinfeld, J.), *aff'd,* 607 F.2d 995 (2d Cir.1979). Further, the particular circumstances of the case must be considered, and the interests and equities of the parties balanced. *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1040 (2d Cir. 1980); *Carl Zeiss Stiftung,* 433 F.2d at 703. Moreover, because laches is an equitable remedy, defendants must also prove that

they acted in good faith in that they did not intend to deceive or confuse the public as to the source of their furniture. *See, e.g., Cuban Cigar,* 457 F.Supp. at 1098–99; *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331, 1344 (2d Cir.1975).

### Inexcusable Delay

■ Defendants seek to show that plaintiff "inexcusably delayed" initiating this action. They contend that Imagineering, which first became aware of Van Klassens's infringing activities in 1987, could not wait until 1991 to pursue its infringement claim.

In June, 1987, Imagineering's founder, William Fisher, saw a Van Klassens' advertisement featuring furniture which Fisher believed infringed his company's trade dress. Imagineering subsequently put Van Klassens on notice of the potential illegality of its activities in a letter sent in July of that year.[1]

Having received no response to this letter and knowing that Van Klassens had shipped its first piece of furniture in August, Imagineering sent a second letter in November, 1987, requesting that the company "cease and desist" the production of its infringing furniture. Van Klassens responded that same month telling plaintiff that it intended to continue to manufacture its furniture ("Van Klassens's 1987 Letter"). Plaintiff did not respond to this letter because, as Victoria Howe, Imagineering's president, testified, she did not see any further advertisements for the furniture immediately thereafter, and so concluded that Van Klassens had ceased production of its infringing pieces.

It was not until February, 1989, that plaintiff saw a Van Klassens advertisement, which, according to Howe, again featured infringing pieces of furniture. However, at this time, a law suit was not feasible because of the turmoil within Imagineering ongoing since June, 1987, when Fisher died suddenly, leaving control of the company uncertain. Fisher had left a majority of the stock in the company to Howe, but had also set up a

---

**1.** Plaintiff's letter stated that it was "most concerned" that the sale of Van Klassens' furniture "may create confusion in the customer's mind as to the connection, source and affiliation" of this furniture with Imagineering's furniture. (Trial Tr. at 203.)

management trust for the employees of the company, and left additional stock both to a good friend and to one of his chief co-workers. All of the stock remained in escrow from the time of his death until March, 1990, at which time Fisher's attorneys settled his estate and Howe took over the company.

Then, in August, 1991, plaintiff learned that additional pieces of infringing furniture had been introduced by Van Klassens shortly after it mistakenly received a bid package containing blueprints for Imagineering pieces to be built for a municipal project in Orange County, California. As Howe testified, this was the "final straw" because the blueprints were for plaintiff's "signature pieces," its half circle and quarter circle settee. (Trial Tr. at 218.)

Imagineering's ownership having been settled by this time, and it being apparent that Van Klassens's infringing activities were not abating, plaintiff sent two cease and desist letters to Van Klassens in October, 1991. Van Klassens responded in November by filing suit in Tennessee, which action plaintiff removed to this court in January, 1992.

Ultimately, Imagineering put Van Klassens on notice of the potential consequences of its actions, and then proceeded with the requisite diligence and prudence. The court, therefore, cannot find that Imagineering inexcusably delayed filing this action.

*Prejudice*

■ Defendants claim that they have been "prejudiced" because, since plaintiff's failure to respond to Van Klassens's 1987 Letter, they have continued to manufacture and advertise Van Klassens furniture, develop goodwill in the "Van Klassens" name, expand the product line, and hire additional employees. Further, they claim prejudice to the degree that Ms. Howe's deteriorating health prevented them from deposing her earlier during discovery, and the Lukingbeals' memories had faded by the time this matter came to trial. Defendants also allege other, but unspecified, instances of such "evidentiary

prejudice." Defendants' Post–Trial Memorandum of Law in Support of Defendants' Defense of Laches and in Opposition to Plaintiff's Claim for Dilution at 5.

To show prejudice, however, defendants must show more than "the simple fact that the business continued during the period of delay." *Cuban Cigar,* 457 F.Supp. at 1098; *Am. Express Co. v. Am. Express Limousine Service, Ltd.,* 772 F.Supp. 729, 737–38 (E.D.N.Y.1991). Moreover, the nature of the prejudice allegedly suffered by defendants cannot be measured without due regard to their own willful conduct, *see Stone v. Williams,* 891 F.2d 401, 404 (2d Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990), *rev'd on other grounds,* 970 F.2d 1043 (2d Cir.1992), specifically as it concerns defendants' continued exploitation of Imagineering's trade dress. *See Weight Watchers Int'l, Inc. v. Stouffer Corp.,* 744 F.Supp. 1259, 1287 (S.D.N.Y.1990) (Mukasey, J.).

Particularly considering that Van Klassens's 1987 Letter followed two unequivocal letters from Imagineering, defendants cannot credibly maintain that the silence following Van Klassens's 1987 Letter constituted acquiescence by Imagineering or justified defendants' claimed reliance.[2] Rather, defendants seemingly took advantage of this silence in order to continue and increase their infringing activities.

Further, although defendants may have been prejudiced to some extent as a result of fading memories, stale evidence or similar problems, *see Stone v. Williams,* 873 F.2d 620, 623 (2d Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 *vacated on other grounds,* 891 F.2d 401 (2d Cir.1989), such prejudice, to the extent that it does exist, is insubstantial. In particular, defendants' claim that the ability to depose Ms. Howe earlier would have yielded tangible benefits is purely speculative, and, in any event, defendants were not restricted in the amount of time available to them for Howe's

---

**2.** Moreover, the mere existence of Imagineering's letters damages defendants' claim. *See Saratoga Vichy Spring Co.,* 625 F.2d at 1041 (upholding laches defense but indicating that "simple warning letter" would have sufficed to defeat it);

*Lambda Elecs. Corp. v. Lambda Technology, Inc.,* 515 F.Supp. 915, 930 (S.D.N.Y.1981) (Ward, J.) (letters sent by plaintiff to defendant constituted a sufficient 'taking of action' to avert the laches defense).

deposition, even if it came later than they wished. Moreover, having heard the testimony of the Lukingbeals at trial, which included specific recollections of certain trips to Europe prior to 1987, the court cannot conclude that the possibility of these two witness' loss of memory justifies a bar against Imagineering's claims.

*Good Faith*

■ Finally, defendants did not act in good faith. After a three-week trial, the jury concluded that they had willfully infringed Imagineering's trade dress. This finding of bad faith alone is sufficient to defeat defendants' laches claim. *See, e.g., Harlequin Enters. Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 950 (2d Cir.1981); *Nikon, Inc. v. Ikon Corp.*, 803 F.Supp. 910, 924–25 (S.D.N.Y. 1992) (Gershon, J.), *aff'd*, 987 F.2d 91 (2d Cir.1993); *West Indian Sea Island Cotton Ass'n v. Threadtex, Inc.*, 761 F.Supp. 1041, 1051 (S.D.N.Y.1991) (Ward, J.); *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F.Supp. 96, 135 (S.D.N.Y.1989) (Conboy, J.); *Cuban Cigar*, 457 F.Supp. at 1099–1101; *accord McDonald's Corp. v. Druck & Gerner, DDS., P.C.*, 814 F.Supp. 1127, 1138–39 (N.D.N.Y.1993).

**B.**

■ Defendants also argue that a presumption of laches arises after three years, which would shift the burden onto plaintiff to prove that defendants were not prejudiced by Imagineering's "failure" to bring this action between 1987 and 1991. *See Constr. Technology, Inc. v. Lockformer Co.*, 704 F.Supp. 1212 (S.D.N.Y.1989) (Mukasey, J.). *But see Frito-Lay, Inc. v. Bachman Co.*, No. 83 Civ. 4484, 1987 WL 11555, at *3, 1987 U.S.Dist. LEXIS 3962, at *7 (S.D.N.Y. May 19, 1987) (Cedarbaum, J.) (agreement by parties establishing six-year period adopted by court). The presumption is grounded in the notion that a claim becomes stale if the acts alleged fall outside of the applicable statute of limitations. *Constr. Technology*, 704 F.Supp. at 1219.

In *Construction Technology*, the court found that, for a false advertising claim brought pursuant to the Lanham Act, a presumption arose after three years. *Id.* at 1221. Judge Mukasey analogized the false advertising claim, which lacked a federal statute of limitations, to a destruction of property claim under CPLR § 214(4), which section carried a three-year statute of limitations. *Id.* at 1219–21. He rejected the analogy to fraud claims (agreed to by both parties) and its six-year limitations period because false advertising, unlike fraud, had no scienter or bad faith requirement. *Id.* at 1219–20. It was the existence of such a requirement, Judge Mukasey reasoned, that justified the longer time period. *Id.* at 1221.

Unlike *Construction Technology*, in which bad faith was not at issue, the jury found that defendants acted in bad faith. Therefore, assuming that a presumption of laches necessarily arises, six years would be a more appropriate period of time than three years.[3] However, even if prejudice to defendants were to be presumed, defendants' bad faith and continuing infringement coupled with Imagineering's 1987 letters and its management troubles form a sufficient basis upon which to reject the laches defense in any event. *Cf. Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 515 (9th Cir.), *cert. denied*, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989) (upholding rejection of defense even if district court failed to presume harm to de-

---

**3.** Although other circuits have indicated that a presumption of laches tied to the analogous state statute of limitations period does arise, *see, e.g., Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365–66 (6th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986) (laches defense rejected because action brought within limitations period), the court is not convinced that this Circuit has recognized such a presumption. *Cf. Stone v. Williams*, 873 F.2d 620, 624 (2d Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362, *vacated on other grounds*, 891 F.2d 401 (2d Cir.1989) (claim un-

der Copyright Act of 1909 and 1976). Although it did not indicate whether a presumption argument had been made, the circuit court held in *Stone*, which was decided shortly after *Construction Technology*, that "it is the reasonableness of the delay rather than the number of years that elapse which is the focus of the [laches] inquiry," and rejected the "mechanical application" of a statute of limitations period. *Id.* Whether the circuit court would apply the *Stone* reasoning in response to a presumption argument arising out of a Lanham Act claim is uncertain, yet the possibility should not be ignored.

fendant because other factors weighed against laches defense).

## II.

### A.

■ An opinion of the court, dated September 8, 1993, awarded Imagineering attorneys' fees for filing a motion for sanctions against defendants and defending against a motion to compel the deposition of one of its attorneys, Susan Gullotti. In accordance with the September 8 opinion, plaintiff filed a request for $44,793.55. The request is adequately documented, and counsel's fee structure reasonable.[4] Therefore, Imagineering's request, less the amount billed for one particular entry detailed below, is hereby granted.

One entry apparently contains a junior associate's time both for 1) finalizing plaintiff's response to defendants' motion to compel Gullotti's deposition and 2) preparing documents for production. Defendants correctly maintain that they were not required to pay for fees arising out of document production. Therefore, half of the time recorded for this entry will be allotted to time spent on document production, and the value of such time ($372.00) will be subtracted from Imagineering's fee request.[5]

4. Defendants did not challenge the reasonableness of plaintiff's attorneys' various hourly rates in connection with the court's September 8 opinion, nor have they challenged these rates currently. The court has no reason otherwise to doubt their reasonableness. *See Cooperstown Bat Company, Inc. v. James Florczak*, No. 92 Civ. 0510 (N.D.N.Y. February 26, 1993) (finding fee structure of Heslin & Rothenberg, i.e., plaintiff's attorneys, reasonable).

5. Defendants argue that the fee request should be further reduced because 1) the sanctions against them did not cover their motion to transfer venue, and 2) they should not be sanctioned for moving to compel Gullotti's deposition. Defendants are simply incorrect that the sanctions did not cover the motion to transfer venue, and have otherwise failed to persuade the court that a reconsideration of its decision on sanctions is warranted.

6. Plaintiff has excluded from its request all fees relating exclusively to its withdrawn patent infringement claim and the fees awarded plaintiff in the court's September 8 opinion.

### B.

■ Currently, Imagineering seeks an award of attorney's fees for this action as a whole, in the amount of $674,442.50.[6] The court may award reasonable attorney's fees to the prevailing party in a trade dress infringement action if it deems the case "exceptional." 15 U.S.C. § 1117 (West Supp. 1993) ("§ 1117"). For a trademark infringement action to be deemed "exceptional," the trier of fact need find only that a defendant's infringing activity was willful. *E.g., Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 272 (2d Cir.1992); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113–14 (2d Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1229 (2d Cir.1987); *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 356–57 (2d Cir.1983); *Quaker State Oil Ref. Corp. v. Kooltone, Inc.*, 649 F.2d 94, 95 (2d Cir.1981) (per curiam).[7]

Clearly, Imagineering is the prevailing party for purposes of § 1117. Further, consistent with the jury's finding on the willfulness of defendants' infringement, the court deems this case "exceptional" under § 1117.[8]

7. Moreover, a district court abuses its discretion if it fails to consider an award of fees where a defendant's bad faith has been established. *See Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 272 (2d Cir.1992); *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 357 (2d Cir.1983).

8. Defendants argue that the case cannot be deemed exceptional on this basis because the special verdict form asked only whether the jury found that defendants' "conduct" was willful, and not their "infringing behavior." In addition to making little sense as a matter of interpretation, this argument ignores the court's instructions to the jury that to award monetary damages to plaintiff—which the jury awarded for both compensatory and punitive damages—it must have found, specifically, that defendants' "infringing behavior" was willful. (Trial Tr. at 1957–58.)

Equally frivolous is defendants' argument that this case cannot be "exceptional" because they could not have anticipated their own liability, given that no federal court has ever held a defendant liable for trade dress infringement of an

Subject to the exclusions discussed below, plaintiff's request for attorney's fees is granted.[9]

■ With respect to the fee itemization itself,[10] defendants first object to $56,470.00 in fees for work done prior to February 16, 1993, during which time, according to defendants, Imagineering's "primary cause of action" was its subsequently withdrawn patent infringement claim (the "Patent Claim"). Defendants' Memorandum of Law in Opposition to Plaintiff's Request for Attorney's Fees and Treble Damages at 20. Although defendants do not adequately explain what constitutes a "primary cause of action" or why such a designation has legal significance, Imagineering has already indicated that all time relating exclusively to the Patent Claim has been deleted from the fee itemization. To the degree that the entries now challenged relate both to the Patent Claim and to plaintiff's other claims, the court finds that such work is sufficiently intertwined with Imagineering's prevailing claims to support a

fee award for such work. *Accord Post Office v. Portec, Inc.,* 913 F.2d 802, 812–13 (10th Cir.1990), *vacated on other grounds,* 935 F.2d 1105 (1991).

■ Second, defendants object to the inclusion of fees for the preparation of two consumer surveys, one of which was excluded by the court and the other of which plaintiff decided not to introduce at trial. These two discrete pieces of evidence did not come before the jury, and, as such, could not have supported the jury's verdict. Therefore, Imagineering is not entitled to an award of fees for time spent on the two surveys, and its fee award will be reduced by $13,428.[11]

■ Third, defendants object to the inclusion of fees for responding to defendants' own request for attorney's fees arising out of the Patent Claim.[12] Because it did not prevail on the Patent Claim and defendants' request was not found to be frivolous, Imagineering is not entitled to attorney's fees so incurred. The fee award will consequently be reduced by $1,225.[13]

---

entire line of furniture. First, a defendant has been found liable for infringing a trade dress across an entire line of books. *See Harlequin Enters. Ltd. v. Gulf & Western Corp.,* 644 F.2d 946, 949–50 (2d Cir.1981). More importantly, the relevant inquiry in considering an award of attorney's fees focuses upon the underlying bad faith of the losing party and/or that party's handling of the litigation, and not, as defendants seem to claim, on whether liability could have been anticipated. Defendants had ample opportunity to present whatever theories they had to the jury, and cannot now be heard to re-argue the question of liability disguised as an attempt to avoid an award of fees.

9. Plaintiff points to various examples of defendants' litigation conduct to support its request for fees. However, given defendants' willfully infringing behavior, the court need not consider whether to award plaintiff fees on this basis.

10. As an initial matter, defendants argue that Imagineering's submission of edited time summaries rather than unedited time slips has prevented them from adequately examining the fee itemization. However, beyond this assertion, defendants have provided no reason to doubt the accuracy of the summaries themselves. Entries provide the date of the work, the attorney's name, a brief description of the work, the time spent doing the work, and the cost of such work (i.e., the time spent multiplied by the hourly rate for that particular attorney). No information relevant to any challenge defendants might

make, therefore, is missing from the time summaries submitted by Imagineering. *See Gucci Am., Inc. v. Rebecca Gold Enters., Inc.,* 802 F.Supp. 1048, 1051–52 (S.D.N.Y.1992) (Newman, J.).

11. This figure was determined by first totalling those entries identified by defendants as related solely to the preparation of the surveys, and then adding to this sum 20% of the total of all other entries identified by defendants which related in part to the preparation of the surveys. Finally, the entry for 4/26/93, as it appears in Exhibit R to Defendants' Memorandum of Law in Opposition to Plaintiff's Request for Attorney's Fees and Treble Damages ("Defendants' Memorandum"), has been deleted from this calculation because it does not relate to plaintiff's survey work.

12. Defendants appear to be under the mistaken impression that the question of their entitlement to fees arising out of the Patent Claim remains unanswered. Although the answer seemed clear enough in the court's October 8, 1993 endorsement, so as to put any doubts to rest, defendants are *not* entitled to an award of their fees.

13. This figure was determined using the same method described above relating to fees for the preparation of plaintiff's surveys. In addition, the entry for 5/27/93, as it appears in Exhibit S to Defendants' Memorandum, has been deleted from this calculation because it does not relate to the request for attorney's fees.

### III.

 Imagineering also seeks its costs pursuant to § 1117. An award of costs is "one of the routine elements" of a prevailing plaintiff's recovery, and is not limited to "exceptional" cases. *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947, 961 (S.D.N.Y.1980) (Tenney, J.); *see Invicta Plastics (USA), Ltd. v. Mego Corp.*, 523 F.Supp. 619, 625 (S.D.N.Y.1981) (Motley, J.). The court believes an award of "taxable costs" to be appropriate here, less those costs incurred in the preparation of Imagineering's consumer surveys for which attorney's fees were denied as well.[14] *See* 28 U.S.C.A. § 1920 (West 1966).

### IV.

Imagineering seeks an increase in the amount of compensatory damages awarded by the jury. A court "may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount," 15 U.S.C. § 1117 (West Supp. 1993), except that such sum "shall constitute compensation and not a penalty." *Id.; Getty Petroleum Corp.*, 858 F.2d at 113.

 Plaintiff contends that defendants' sales of infringing furniture were underreported at trial, primarily because sales invoices submitted into evidence excluded "contract" sales,[15] and because the invoices themselves contained various gaps, both in terms of invoice number and dates of sale. For example, plaintiff established that there were no invoices for the five month period from September, 1988 to March, 1989, (Trial Tr. at 1657–58), and that even though Mr. Lukingbeal testified at his deposition that 1992 sales totalled 642 pieces of furniture, sales invoices reflected only 526 pieces. (Trial Tr. at 1658.) Defendants claim that, despite any discrepancies, contract sales figures were introduced through sales summaries and financial statements, and that any gaps in the sales invoices arose either as a result of "voided" invoices or from periods of time during which no sales were made.

However, through August 18, 1993, the sales summaries show total sales (excluding sales of non-infringing pieces) of $1,231,308, (Trial Tr. at 1682), whereas the sales invoices—through only June 25, 1993—show total sales of $1,487,437. (Trial Tr. at 1683). Defendants have not adequately explained this discrepancy, particularly given their contention that the summaries contain the contract sales *and* the sales reflected through the sales invoices, or the gaps in the dates and numbers of the sales invoices. This raises the concern in the court's mind that either Van Klassens's sales were not fully reflected at trial, or, if they were, were reflected in such a way that the jury could not fully understand and accurately consider them.[16]

---

**14.** Defendants argue that plaintiff failed to comply with the requirements of Local Rule 11(a) by filing its motion for costs prematurely and by failing to submit its affidavit and attach supporting documentation in compliance with the Rule. Although defendants are correct that plaintiff did not literally comply with the Rule, the court retains broad discretion in interpreting the requirements of a local rule. *Barrett v. U.S.*, Nos. 76 Civ. 381 & 76 Civ. 1061, 1991 WL 143738, at *1–2, 1991 U.S.Dist. LEXIS 10002, at *3 (S.D.N.Y. July 23, 1991) (Motley, J.); *see In re "Agent Orange" Prod. Liab. Litig.*, 100 F.R.D. 778, 780 (E.D.N.Y.1984); *New York v. Muka*, 440 F.Supp. 33, 36 (N.D.N.Y.1977).

It would not make sense to have plaintiff move for attorney's fees and enhanced damages now, and then file a separate motion for costs at some later date. *Cf. U.S. v. Yonkers Bd. of Educ.*, 118 F.R.D. 326, 327 (S.D.N.Y.1987) (Sand, J.) (permitting award of interim fees where facts and circumstances of particular matter so warrant). Further, the affidavit submitted by plaintiff constitutes adequate proof of the costs incurred and their necessity. It provides defendants with sufficient detail upon which to base any challenge to any particular cost item—something which defendants have chosen not to do. *See Barrett*, 1991 WL 143738, at *1–2, 1991 U.S.Dist. LEXIS 10002, at *3; *Invicta Plastics (USA), Ltd.*, 523 F.Supp. at 625.

**15.** According to plaintiff, "contract" sales were sales involving major installations of pieces of Van Klassens's furniture. Defendants do not dispute this definition.

**16.** Plaintiff also claims that the jury award did not adequately compensate it because 1) defendants received benefits from the goodwill and reputation enjoyed by plaintiff resulting from the over $2 million spent on advertising and product development and 2) sales were lost to consumers who refused to buy Imagineering furniture, believing that it had been manufactured by defendants. However, plaintiff does not show why the

Therefore, Imagineering is entitled to enhanced damages.[17]

### V.

 Within the parameters established by Rule 65(d), Fed.R.Civ.P.,[18] a court retains a "wide range of discretion" in fashioning an equitable remedy, *see Springs Mills, Inc.,* 724 F.2d at 355, and should approach the framing of an injunction flexibly. *Soltex Polymer Corp. v. Fortex Indus., Inc.,* 832 F.2d 1325, 1329 (2d Cir.1987). Any doubts in respect of the reach of appropriate injunctive relief should be resolved in favor of an innocent plaintiff and against a willful infringer. *See Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947); *William R. Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 532, 44 S.Ct. 615, 618, 68 L.Ed. 1161 (1924). Further, once a defendant has been found liable for infringement, a court may proscribe activities that it could not have proscribed prior to the finding of liability. *See Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 705 (5th Cir.1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 390 (5th Cir.1977); *see also U.S. v.* *Loew's Inc.,* 371 U.S. 38, 53, 83 S.Ct. 97, 106, 9 L.Ed.2d 11 (1962) ("otherwise permissible practices connected with the acts found to be illegal must sometimes be enjoined"); *Broderick & Bascom Rope Co. v. Manoff,* 41 F.2d 353, 354 (6th Cir.1930) (injunction appropriate even if it "involves a handicap as compared with those who have not [been convicted of unfair competition]").

 Defendants claim that an injunction cannot issue that would be sufficiently specific to satisfy Rule 65(d).because Imagineering failed, at trial, to define its trade dress adequately. However, plaintiff submitted evidence of infringement covering over 20 pieces of its furniture, including both photographs and actual examples of the furniture itself, and submitted a written description of its trade dress as well. The jury found that Imagineering had a protectable trade dress extending across its entire line of furniture, and that Van Klassens had willfully infringed it. For defendants, then, still to claim that there is "no proof or findings as to what common features make up plaintiff's alleged trade dress" such that it is "impossible" to frame an enforceable injunction strains credibility.[19] Defendants' Post–Trial Memoran-

---

jury did not already have the opportunity to consider these claims in its initial deliberations, and, in any event, to enhance a damages award on this basis would be too speculative.

**17.** In addition to objecting to an increase in plaintiff's damages award, defendants argue that the court should decrease the amount of the award. They claim that the award was excessive if based upon: 1) defendants' profits, because there were none; 2) plaintiff's lost profits, because plaintiff stipulated that it was not seeking lost profits; or 3) a reasonable royalty, because it would exceed the 30% royalty that plaintiff asserted would be reasonable.

The jury has already had the opportunity to consider the facts supporting these claims at trial, and defendants have not provided the court with sufficient reason to question the jury's findings. The jury was instructed that a damages award could be based upon plaintiff's lost sales and loss of goodwill. On this basis alone, the jury's verdict is amply supported by the weight of the evidence.

It is perhaps also worth noting that, as a matter of statutory interpretation, a court may have the discretion to reduce a damages award only to the extent that it is based upon a defendant's profits, and not upon a plaintiff's lost profits or a reasonable royalty. However, the court does not rely upon this reading of § 1117 in rejecting defendants' arguments.

**18.** Rule 65(d) reads, in relevant part:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in its terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.
Rule 65(d), Fed.R.Civ.P.

**19.** Further, defendants claim that an injunction cannot apply to the future production of all of defendants' "allegedly" infringing furniture because the jury verdict could mean that only one piece of plaintiff's furniture was inherently distinctive and was infringed. Throughout the trial, however, plaintiff maintained that it had a protectable trade dress in its entire line of furniture, and there is no basis to conclude that the jury rested its verdict upon the infringement of only a single piece or limited pieces of plaintiff's furniture. Such a verdict would be inconsistent with both the nature of the damages award and plaintiff's claim.

dum of Law Concerning the Form of Any Permanent Injunction and Counter–Form of Proposed Injunction at 4–5.

■ Defendants also object to the use of pictures to describe plaintiff's trade dress, but this is an appropriate response to the difficulties inherent in relying upon mere words and phrases to describe the "total image of a product, which image may include features such as size, shape, color or color combinations, texture or graphics." *Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985) (definition of trade dress). To require that Imagineering describe its trade dress only in prose would run the risk, first, that the description might not adequately describe this "image," and, second, that defendants' would be provided numerous opportunities to seek to evade the injunction's proscription by, for example, changing one aspect of a multi-faceted "image" and claiming that the trade dress, as defined, was not being infringed.

■ Further, defendants' argument to the contrary notwithstanding, the court has the authority to permanently enjoin the infringement of pieces of furniture not at issue in this action. Where, as here, liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of infringement remains, it is appropriate to permanently enjoin the future infringement of pieces of furniture not currently in controversy. *Orth–O–Vision, Inc. v. Home Box Office*, 474 F.Supp. 672, 685–86 (S.D.N.Y. 1979) (Gagliardi, J.) (copyright infringement); *see also Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C.Cir.1990) (copyright infringement); *Encyclopaedia Britannica Educ. Corp. v. Crooks*, 542 F.Supp. 1156, 1187–88 (W.D.N.Y.1982) (copyright infringement). Therefore, an injunction issuing in this case may properly enjoin all future infringing activities of Van Klassens, including pieces of furniture bearing Imagineering's trade dress that were not made the subject of this law suit.

■ Defendants continue that they cannot be enjoined from undertaking specific activities if the jury failed to determine the impropriety of these activities explicitly.[20] However, having been found liable for infringement, defendants may have their future activities limited in ways that prior to the trial might not have been permissible. *See, e.g., Chevron Chemical Co.*, 659 F.2d at 705. Inclusion of specific prohibitions in the injunction would provide some clear indication of what Van Klassens may not do by way of advertising its products and competing with Imagineering.

■ It is also appropriate that the infringing furniture currently within the possession of defendants be destroyed, which discretion to so order rests with the trial court. *See, e.g., West & Co. v. Arica Inst., Inc.*, 557 F.2d 338, 343 n. 9 (2d Cir.1977); *Shen Mfg. Co. v. Suncrest Mills, Inc.*, 673 F.Supp. 1199, 1207 (S.D.N.Y.1987) (Tenney, J.); *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 208 U.S.P.Q. 80 (W.D.N.Y.1979). However, monetary fines for violations of the injunction should not be explicitly provided for unless there has been a showing either that the requested amount bears a reasonable relationship to Imagineering's probable loss or that any such loss would be difficult to estimate precisely. *See, e.g., United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 740 (2d Cir.1989) (establishing basic framework for evaluating liquidated damages provision in contract).

■ Finally, it is insufficient for the injunction to contain only the requirement that Van Klassens clearly label its products in the future. Even if the court assumes *arguendo* that labelling would be effective in eliminating customer confusion in certain situations,

Equally unsuccessful is defendants' argument that an injunction should not issue that would prevent Van Klassens from manufacturing furniture from designs already in the public domain. This seems a transparent attempt to re-argue the question of the functionality of plaintiff's trade dress, an argument that the jury has already considered and rejected.

20. Specifically, defendants object to plaintiff's request to enjoin Van Klassens from 1) advertising that its furniture is made of solid Honduran mahogany and 2) unfairly competing with plaintiff by emphasizing in advertising the use of Awlgrip paint, West System Epoxy, nautical lines, boat building materials, boat building techniques and mortise and tenon joinery.

such as at the point of sale, it still would not address "other forms of likely confusion that are equally actionable" and relevant in this case, such as post-sale confusion. *See Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872–75 (2d Cir.1986); *see also Harlequin Enters. Ltd.*, 644 F.2d at 949 (difference in names insufficient because "combination of features as a whole" is determinative); *PAF S.r.l. v. Lisa Lighting Co.*, 712 F.Supp. 394, 411 (S.D.N.Y.1989) (Newman, J.) (where trade dress distinctive and products closely resemble one another, labelling insufficient).

## CONCLUSION

Defendants have failed to prove that laches should bar plaintiff's claims. The court awards Imagineering $704,211.05 in attorney's fees and $250,000 in enhanced damages. This award is in addition to the $860,-000 in compensatory damages and $4 million in punitive damages awarded by the jury at trial. Plaintiff is entitled to its costs. Finally, plaintiff is ordered to submit on notice a proposed form of injunction consistent with this opinion.

**IT IS SO ORDERED.**